## Case No. 6,492.

HILL et al. v. The GOLDEN GATE.

[Newb. 308;[1] 5 Am. Law Reg. 142; 36 Hunt, Mer. Mag. 449.]

District Court, E. D. Missouri. Sept. Term, 1856.[2]

MARITIME LIENS—ENROLLMENT OF VESSEL—OWNERS—CHARTER PARTY.

1. Whether a vessel is a domestic or a foreign vessel depends, subject to some modifications and exceptions, upon the residence of her owners, not upon the port of her enrollment.

[Cited in The Mary Bell, Case No. 9,199; City of St. Louis v. Wiggins Ferry Co., 11

[1] [Reported by John S. Newberry, Esq.]
[2] [Affirmed in Case No. 6,491.]

Wall. (78 U. S.) 431; The Witch Queen, Case No. 17,916; The George T. Kemp, Id. 5,341; The Rapid Transit, 11 Fed. 329; The Jennie B. Gilkey, 19 Fed. 129.]

2. The lien against a vessel, in favor of material men under the general maritime law of the United States, also depends upon the residence of her owners, not upon the port of her enrollment.

[Cited in Hill v. The Golden Gate, Case No. 6,491; McAllister v. The Sam Kirkman, Id. 8,658; The Albany, Id. 131; The Norman, 6 Fed. 408; Stephenson v. The Francis, 21 Fed. 718; The Cumberland, 30 Fed. 451.]

3. When there is a charter party, and by its terms, the charterers are to have exclusive possession, control, and management of the vessel, to appoint the master, run the vessel, and receive the entire profits, they, and not the general owners, are to be deemed the owners, and are alone responsible for damages and contracts.

[Cited in The Samuel Marshall, 49 Fed. 757; Id., 4 C. C. A. 385, 54 Fed. 399; Norwegian Steamship Co. v. Washington, 6 C. C. A. 313, 57 Fed. 227.]

4. Thus, where a steamboat was owned in Indiana, enrolled in Kentucky, chartered by residents of St. Louis, Missouri, and contracted debts to residents of Missouri; held, that under the general maritime law of the United States, the charterers and the material man both residing in Missouri there was no lien upon the vessel.

[Cited in The Pirate, 32 Fed. 489; The Samuel Marshall, 4 C. C. A. 385, 54 Fed. 399.]

5. The act of congress, entitled, "An act to provide for recording the conveyances of vessels, and for other purposes," (9 Lit. & B. Laws, 440), does not extend to charter parties.

[This was a libel for supplies, brought by Hill, Conn, and others, against the steamer Golden Gate.]

John H. Rankin and Wm. Biddlecome, for libelant.

Geo. R. Shipley, for steamer.

WELLS, District Judge. The steamer Golden Gate was owned in Indiana, and enrolled at Louisville, Kentucky. The owners chartered her to certain persons who resided at St. Louis, Missouri. By the terms of the charter party the charterers were to have the boat for four months, with a privilege to renew the charter party, upon a specified notice, for four months more. The charterers were to pay the owners $800 per month for the hire of the boat, and were to have the entire and exclusive control and management of her for the time specified; were to receive her earnings, and keep her clear of all liens and claims. The charterers appointed the master, ran the boat, and during the charter party contracted debts in Missouri for materials and supplies, a part of which were furnished by the libelants, and are the same for which the libels in this case are filed. Other libelants furnished materials and supplies before the boat was chartered.

The principal question for the court now to examine and decide is, have the libelants in this case a lien upon the boat by the general maritime law of the United States, for the materials and supplies thus furnished? If materials and supplies be furnished to a ves-

sel in a port of the state to which she belongs, the material men have no lien by the general maritime law; the presumption being that the supplies are furnished on the credit of the owners, and not on that of the boat. On the contrary, if the materials and supplies be furnished to a foreign vessel—that is a vessel belonging to a foreign country or to another state—then a lien is given on the vessel by the general maritime law; the presumption being that the material men looked to the vessel as well as to the owners for security. There may be a lien on a vessel for materials and supplies furnished in a port of the state to which she belongs, but in such case it is given by the local law of the state. 1 Conk. Adm. 56, and pages following. In regard to these principles there is no controversy.

The question whether the Golden Gate is subject to a lien by the general maritime law for supplies furnished in St. Louis, after the charter party was entered into, will depend for an answer on her being then in a foreign or domestic port. Does her being a foreign or domestic vessel depend on the residence of her owners, or on the port of her enrollment? As a general rule, which general rule, however, is subject to some modifications and exceptions, it depends on the residence of her owners or those who are, for the time, to be deemed and treated as her owners. If it depends on the residence of her owners, then the next question will be, who are to be deemed and treated as her owners in this case? Are they the general owners residing in the state of Indiana, or the charterers residing in St. Louis, Missouri? That the supreme and circuit courts of the United States look to the residence of the owners and not to the place of enrollment of a vessel to determine her character, will be apparent by examining the decided cases. The residence of the owners is proved and stated, and nothing is said about the enrollment. See the statement of the case and opinion in The General Smith, 4 Wheat. [17 U. S.] 438; The Nestor [Case No. 10,126], where Judge Story says: "Prima facie the supplies of material men to a foreign ship, that is to a ship belonging or represented to belong to owners residing in another state or country, are to be deemed to be furnished on the credit of the ship and the owners until the contrary is proved. Statement of the case and opinion in The Chusan [Id. 2,717].

If the character of the vessel, foreign or domestic, depended on the enrollment and not on the residence of the owners, the statements and proof of the residence of owners, and the language of Judge Story in the case of The Nestor [supra] were idle and unimportant; and as nothing was said or proved about the enrollment, there could be nothing by which to determine the character of the vessel.

It is important to observe that the character of the vessel is only referred to for the purpose of ascertaining to whom and to what the credit is given; and in no other respect, so far as regards this case, is it important. If the owners reside in a foreign country or in another state, the material man is presumed to give credit to the boat and also to the owners; because he is presumed not to rely alone on the owners, who live so remote and who are beyond the jurisdiction of the courts of this state. If the owners reside in the same state with the material man, the latter can easily resort to them for payment, and readily enforce it in the courts; therefore he may well be supposed to give credit to the owners alone. It is apparent, therefore, that the place of enrollment has nothing to do with the credit that is given; and has, therefore, nothing to do with the question of lien. If the material men were ignorant of the place of residence of the owners, they might presume, and I think the presumption would be reasonable, that the owners resided at or near the port where the vessel was enrolled; but in this case there is no room for presumption, as it is admitted that the libelants knew when the supplies were furnished, that the general owners resided in Indiana, and the charterers in St. Louis, and that the boat was enrolled at Louisville. I am aware of the case of Tree v. The Indiana [Case No. 14,165], and that it decides that a vessel is to be deemed to belong to the port where she is enrolled. It is founded solely on the third section of the act of 31st December, 1792, entitled "An act concerning registering and recording of ships or vessels." 1 Lit. & B. Laws U. S. 288 [1 Stat. 288]. That section provides "that every ship or vessel hereafter to be registered, except as hereinafter provided, shall be registered by the collector of the district in which shall be comprehended the port to which such ship or vessel shall belong at the time of her registration, which port shall be deemed to be that at or nearest to which the owner, if there be but one, or if more than one, the husband or acting and managing owner of such ship or vessel, usually resides." The substance of the section is that the vessel is to be registered at the port to which she belongs; and for the purpose of registry, the port to which she belongs shall be deemed to be that at which the owner resides, or the port nearest to which he resides. The section is only directing at what port the vessel is to be registered, and has no other effect. It frequently happens, as it happens in this case, that the owners reside in one state, and the port nearest to them is in another state—and this is especially the case on the Ohio and Mississippi rivers, which divide states. The above act relates to registering vessels—those engaged in foreign trade. But a subsequent act, February 18, 1793,—1 Lit. & B. Laws, p. 305, § 2 [1 Stat. 305].—providing for the enrollment of vessels (those engaged in the coasting trade), expressly provides that the place of abode of

the owners shall be stated in the enrollment. According to the late and well considered case of Dudley v. The Superior [Case No. 4,-115], which reviews the above case [Case No. 14,165], the place of enrollment is only prima facie evidence of the port to which the vessel belongs. See, also, Sharp v. United Ins. Co., 14 Johns. 201; and Leonard v. Huntington, 15 Johns. 302. It will be observed that when the port or place to which a vessel belongs is spoken of, it always means the port or place where the owners reside to whom the vessel belongs.

I have before remarked in this opinion, that the rule that a foreign vessel was subject to a lien for supplies, and that a domestic vessel was not thus subject, under the general maritime law, was not without exceptions and modifications; but it will be seen that those exceptions and modifications all show that the lien depends on the residence, or supposed residence, of the owners, and not on the place of enrollment. Thus, if the owners of a domestic vessel held out their vessel as a foreign vessel—that is, as belonging to persons residing in a foreign country—they are precluded by their own act from denying her foreign character, when libeled by material men; and there will be a lien for the supplies furnished, enforced in the admiralty. The St. Jago De Cuba, 9 Wheat. [22 U. S.] 416, 417. Again: If an exclusive credit be given to the master, there is no lien, although she be a foreign vessel. The Nestor [Case No. 10,126]. Again: If the contract be made with the owners personally and not with the master, there is no lien—the presumption being that the credit was given to the owners personally, and not on the credit of the vessel. The St. Jago De Cuba, supra. The act of congress of the 3d of March, 1851,—9 Lit. & B. Laws, 635 [9 Stat. 636],—entitled, "An act to limit the liability of ship owners and for other purposes," (section 5) provides, "that the charterer or charterers of any ship or vessel, in case he or they shall man, victual and navigate such vessel at his or their own expense, or by his or their own procurement, shall be deemed the owner or owners of such vessel, within the meaning of this act; and such ship or vessel, when so chartered, shall be liable in the same manner as if navigated by the owner or owners thereof." The above section applies, I presume, only to certain losses and injuries specified in the act, and moreover is declared not to apply to inland or river navigation; the last, as I suppose, was because the general maritime law of the United States was not at that time, March, 1851, thought to apply to the inland navigation, the decision of the supreme court of the United States declaring it to extend to inland navigation, not having, at that time, been made. But it applies in many cases, and to all navigation except the inland navigation; and shows that the place of enrollment can have nothing to do with it. And so far as the act provides, it shows the opinion of congress that the charterers are to be, and ought to be, considered the owners.

Having established, as I think, the proposition that the lien in favor of material men under the general maritime law, depends on the residence of the owners, and not on the place of enrollment, it becomes necessary to inquire who, in this case, are to be deemed the owners. The law, I think, is perfectly well settled, that where there is a charter party, and by its terms the charterers, as in this case, are to have exclusive possession, control and management of the vessel during the term specified—are to appoint the master, run the vessel, and receive the entire profits—they, and not the general owners, are to be deemed the owners, and are alone responsible for damages and contracts. Gracie v. Palmer, 8 Wheat. [21 U. S.] 632, 633; Marcardier v. Chesapeake Ins. Co., 8 Cranch [12 U. S.] 39; Abb. Shipp. (Eng. Ed.) p. 57, note 1, and cases there cited; Id. 288, 289, same paging and note; The Volunteer [Case No. 16,991]; Kleine v. Catara [Id. 7,869]. Indeed, upon principle as well as authority, there cannot be a doubt. It might as well be contended that if you hire your horse to another to perform a journey, you, and not he, would be responsible for his shoeing and food.

It was said in the argument of this cause, that the charter party was not recorded. This can make no difference, as the only effect of recording would be to give notice of its existence—there being no act of congress declaring it to be void for want of recording, and the material men expressly admitting that they knew of the charter party when they furnished the supplies. Abb. Shipp. (Eng. Ed.) p. 33, note 1, and cases there cited. There is an act of congress,—9 Lit. & B. Laws, 440 [9 Stat. 440],—entitled "An act to provide for recording the conveyances of vessels, and for other purposes." But it does not extend to charter parties; and the instruments which the act requires to be recorded, are not declared invalid as to those having actual notice thereof.

I come, therefore, to the conclusion, that for supplies furnished the Golden Gate at St. Louis, after she was chartered, the material men and the charterers both residing there at the time, there is no lien upon the vessel by the general maritime laws of the United States.

[The decision of the district court was affirmed by the circuit court in an opinion by Treat, District Judge. Case No. 6,491.]